IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 14-CR-20096-JAR-01 |
| VICENCIO OLEA-MONAREZ, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Vicencio Olea-Monarez's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 690).[1] The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants in part Olea-Monarez's motion for compassionate release.

**I.   Background**

On October 22, 2014, Defendant Olea-Monarez and nine co-defendants were charged in a Superseding Indictment with criminal offenses including conspiracy to possess with intent to distribute more than 50 grams of methamphetamine (Count 1), conspiracy to possess with intent to distribute more than 1,000 marijuana plants (Count 2), distribution and possession with intent to distribute methamphetamine (Counts 3, 5–9, 12, 15, 18-19, 21, 23–24), possession with intent to distribute cocaine (Count 27), maintaining a residence for the purpose of storing, using and distributing methamphetamine and cocaine (Counts 22, 26, 29), and possessing a firearm in

---

[1] Olea-Monarez filed the motion for compassionate release *pro se*, but also filed a Supplement to Motion to Reduce Sentence (Doc. 695) by and through counsel, Assistant Federal Public Defender Kayla Gassman.

furtherance of a drug trafficking crime (Counts 25, 28).[2]  A jury convicted Olea-Monarez on all 21 counts with which he was charged.

This Court determined that Olea-Monarez's sentencing guideline range was life on most of the drug-related convictions.  On November 2, 2016, the Court imposed a sentence of life, plus a consecutive sentence of 5 years on the first firearms conviction (Count 25) and a consecutive sentence of 25 years on the second firearms conviction (Count 28), for a controlling sentence of life plus a consecutive 30 years.[3]

The Court applied and calculated the sentencing guidelines as follows:

Base offense level 38
+ 2 levels for maintaining drug-involved premises
+ 2 levels for importation of methamphetamine
+ 4 levels for being an organizer or leader
+ 2 levels for obstruction for lying during his trial testimony

 for an Adjusted Offense Level of 48.  The sentencing guideline range for offense levels of 43 or higher is life in prison.  The Court further sentenced Olea-Monarez to the mandatory minimum of 5 years on the first 924(c) count and 25 years on the second 924(c) count, with both counts running consecutive to all other counts.  At the time the Court sentenced Olea-Monarez, the statutory mandatory sentence for the second 924(c) conviction was 25 years.

On direct appeal, the Tenth Circuit affirmed Olea-Monarez's convictions and sentences.[4]  Olea-Monarez filed a § 2255 motion seeking to vacate his sentence.[5]  After an evidentiary

---

[2] Doc. 47.

[3] Doc. 396.

[4] *United States v. Olea-Monarez*, 908 F.3d 636 (10th Cir. 2018).

[5] Doc. 666.

hearing, this Court denied the motion and denied a certificate of appealability.[6] Olea-Monarez filed a notice of appeal,[7] and the appeal is pending.

Olea-Monarez is currently incarcerated at Hazelton USP. He has no projected release date given his sentence of life. Olea-Monarez acknowledges that although he is a permanent resident of the United States, his offenses of conviction will likely result in his deportation if he is released.

## II.   Discussion

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions.' One such exception is contained in § 3582(c)(1)."[8] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[9] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[10] The Court may deny a § 3582(c)(1)(A) motion "when any of the three

---

[6] Doc. 749.

[7] Doc. 756.

[8] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (alteration in original) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[9] Pub. L. No. 115-391, 132 Stat. 5194.

[10] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[11]  If the Court grants the motion, however, it must address all three steps.[12]

### A. Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the government invokes it.[13]  Here, the government concedes that Olea-Monarez has properly exhausted his claim.  The Court thus proceeds to the merits.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant the motion.  The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[14]  That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[15]  Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[16]  Thus, § 3582(c)(1)(A)'s consistency requirement did not constrain the Court's discretion to consider whether extraordinary and compelling reasons warranted a sentence reduction.[17]

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the

---

[11] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[12] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

[13] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[14] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[15] *Id.*

[16] *See id.*

[17] *Id.* at 836–37.

Bureau of Prisons or a defendant."[18] The policy statement lists grounds that constitute extraordinary and compelling circumstances, and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence" where there has been a change in law.[19] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons."[20] Rather, the catch-all provision allows the Court to consider any circumstances which are similar "in gravity" to the listed categories.[21]

Olea-Monarez offers the following as extraordinary and compelling reasons justifying his compassionate release in this case: (1) the First Step Act's elimination of sentence stacking under 18 U.S.C. § 924(c), (2) a policy disagreement with the sentencing guidelines reliance on the purity of the methamphetamine, (3) the "trial penalty" exacted in imposing a life sentence in this case, (4) the sentencing disparities between he and his codefendants, and (5) "other reasons," including rehabilitation and individual circumstances. The Court addresses each in turn.

1. **Stacking of the two § 924(c) counts**

Olea-Monarez was convicted of Counts 25 and 28, for using or carrying a firearm during and in relation to a drug trafficking crime. This Court sentenced him to five years on Count 25 and 25 years on Count 28, with both counts running consecutive to each other and to all other counts. This "stacking" of the § 924(c) counts was authorized at the time Olea-Monarez was

---

[18] *United States v. Bradley*, 97 F.4th 1214, 1217 at n.1 (10th Cir. 2024).

[19] U.S.S.G. § 1B1.13(b).

[20] U.S. Sent. Comm'n, Supp. to Appx. C, Amendment 814, Reasons for Amendment, at 207.

[21] *Id.*; U.S.S.G. § 1B1.13(b)(5).

sentenced.[22]  But Section 403(a) of the First Step Act amended § 924(c) to authorize an enhanced sentence for a second or subsequent § 924(c) conviction only when the first conviction arises from a separate case and becomes final before the second conviction.[23]  In other words, the First Step Act limits the mandatory consecutive 25-year sentence to § 924(c) offenses that occur "after a prior conviction under this subsection has become final."[24]  The First Step Act, however, limited the retroactivity of this change to "any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."[25]  Olea-Monarez's § 924(c) offenses were committed prior to the enactment of the First Step Act in December 2018 but he was sentenced on November 2, 2016, before the First Step Act was enacted.  Thus, the First Step Act amendment to § 924(c) does not retroactively apply to Olea-Monarez.

Nonetheless, Olea-Monarez argues, and the government concedes, that the First Step Act amendment represents a dramatic change in the sentencing of subsequent § 924(c) convictions that constitutes an extraordinary and compelling reason for this Court to grant Olea-Monarez's motion, in part, and reduce his sentence on Count 28 from 25 years to five years consecutive to all other counts.  Olea-Monarez received a 30-year consecutive sentence on these two § 924(c) convictions, instead of the 10-year consecutive sentence he would have received if the First Step Act amendment was retroactively applicable to him.  Given the change in the law and the 20-year difference a retroactive application of the amended law would make, the Court concludes

---

[22] *See Deal v. United States*, 508 U.S. 129, 132–33 (1993) (§ 924(c) convictions that are part of the same case are stacked such that the second such conviction is subject to the mandatory consecutive sentence for a second § 924(c) conviction).

[23] First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194 (Dec. 21, 2018).

[24] 18 U.S.C. § 924(c)(1)(C)(i).

[25] *United States v. Maumau*, 993 F.3d 821, 826 (10th Cir. 2021) (quoting 132 Stat. at 5222)).

that this is an extraordinary and compelling reason to grant Olea-Monarez this reduction in sentence. Further, this reduction is consistent with the applicable policy statements issued by the United States Sentencing Commission and is appropriate based on the factors set forth in Section 3553(a).

Olea-Monarez further argues that his life sentence on the drug-related convictions represents an "unusually long sentence" under Sentencing Guideline § 1B1.13(b)(6) that should be reduced because of the change in the law on § 924(c). Section (b)(6) provides that there are extraordinary and compelling reasons for a sentence reduction where: (a) the defendant received an "unusually long sentence"; (b) has served at least 10 years; (c) there is "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive)"; (d) "such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed"; and (e) "after full consideration of the defendant's individualized circumstances."[26]

Though Olea-Monarez has received a life sentence[27] on many of the drug counts, and though he has served more than 10 years,[28] the change in the law on subsequent § 924(c) convictions in no way produced a gross disparity in the sentence he is serving on the drug-related counts of conviction. The weight and types of drugs Olea-Monarez trafficked—cocaine, heroin, methamphetamine, and marijuana; his role in the offense as the top leader and organizer of this large drug trafficking organization; his involvement in the importation of drugs from Mexico; and his perjury during his trial testimony resulted in his life sentence under the sentencing

---

[26] U.S.S.G. 1B1.13(b)(6) (Nov. 1, 2023).

[27] He received concurrent life sentences on some of the drug counts and lesser sentences on other drug counts. Because all of the sentences run concurrently, except for the two § 924(c) counts, his controlling sentence is life plus the consecutive sentences on the two § 924(c) counts.

[28] He has been in custody since his arrest on September 2, 2014. Doc. 5.

guidelines. The § 924(c) counts did not affect or contribute to the guideline calculation on the drug counts. Even without a single 924(c) conviction, Olea-Monarez's Adjusted Offense Level would still have been 48, five-levels above the maximum offense level of 43. The sentencing guideline range for offense levels of 43 or higher is life in prison. The Court thus rejects Olea-Monarez's argument that he should also receive a reduction to his life sentence on the drug counts under Section (b)(6),[29] though the Court considers below whether he should receive a reduction to his sentence on the drug-related counts based on the three-part test for motions for compassionate release, including the "other reasons" category at Section (b)(5).[30]

### 2. Policy Disagreement with Methamphetamine Guidelines

In his *pro se* motion, Olea-Monarez argues that the Court should "find a policy disagreement with methamphetamine sentencing guidelines as extraordinary and compelling reasons," citing to *Kimbrough v. United States*,[31] recognizing that Courts have the authority to vary from the sentencing guidelines based on a policy disagreement with the guidelines, and citing to district court cases in which judges imposed downward variances based on policy disagreements with calculating guidelines based on the purity of methamphetamine.[32]

But this is not a case where any such policy disagreement matters. Some courts have expressed concerns that methamphetamine guideline sentences are unduly based on purity and quantity which do not always correlate to a defendant's degree of culpability. But that is not a warranted concern in this case. The trial evidence in this case proved that Olea-Monarez was conservatively responsible for transporting an average of 10 pounds of methamphetamine per

---

[29] U.S.S.G. 1B1.13(b)(6) (Nov. 1, 2023).

[30] U.S.S.G. 1B1.13(b)(5) (Nov. 1, 2023).

[31] 552 U.S. 85 (2007).

[32] Olea-Monarez's counsel does not raise this argument in the Supplement to Motion to Reduce Sentence (Doc. 695) or in the Reply (Doc. 775).

month from February 2013 through August 2014, for a total of 190 pounds or 86.18 kilograms of methamphetamine. Because the methamphetamine seized was well over 80% pure, it was considered "ice" for guideline purposes. But Olea-Monarez's Base Offense Level of 38 was based on an offense involving **at least 4.5 kilograms** of methamphetamine ice. He was conservatively involved with **86 kilograms** of methamphetamine ice. Olea-Monarez was also involved in trafficking cocaine and heroin, and he trafficked marijuana from two large marijuana grow operations that he owned and controlled. None of these other types of drugs were included in the guideline calculation. Moreover, Olea-Monarez was the organizer and leader of this large-scale drug operation, which included his nine co-defendants, as well as unindicted coconspirators. None of the policy disagreements courts have raised in other cases constituted reasons for a downward variance at the time of sentencing, nor constitute extraordinary and compelling reasons now.

### 3. Trial Penalty

Olea-Monarez further argues that his sentence reflects a "trial penalty," for exercising his right to a jury trial. He claims that prior to trial the government offered to let him plead to a 25-year sentence. During the plea negotiations, Olea-Monarez filed a § 2255 petition alleging ineffective assistance of counsel. The Court heard evidence and entered an order finding no ineffective assistance of counsel.[33] The Court found that before trial, Olea- Monarez's counsel, Michael Clarke, offered a binding plea to a 20-year sentence; the government countered with a binding plea to 25-years on Counts 1 and 2 (methamphetamine conspiracy and marijuana conspiracy). Notably, "[i]n extending the offer, Assistant United States Attorney ('AUSA') David Zabel noted that, by his calculation, Petitioner was most likely looking at a life sentence,

---

[33] Doc. 749 at 4–5.

9

even with a three- level reduction for acceptance of responsibility."[34]  Olea-Monarez rejected the offer and went to trial.[35]

In any case, even if the parties had entered into such a binding plea agreement, it would not have bound the Court to impose a 25-year sentence unless the Court accepted the binding plea agreement and agreed to be bound by its terms.  Moreover, as the government points out, even if Olea-Monarez had pled guilty to only Count 1, the drug trafficking conspiracy, and one of the three drug premises counts, based on the quantity of methamphetamine that Olea-Monarez was involved in, he still would have faced a guideline sentence of life, based on an Adjusted Offense Level of 45, which exceeds the maximum offense level of 43.[36]  He would have faced that guideline even if he had pled guilty and received three levels off for acceptance of responsibility.  But instead, Olea-Monarez exercised his right to a jury trial and perjured himself testifying to a duress defense, resulting in a two-level enhancement for obstruction and no reduction for acceptance of responsibility.  The so-called "trial penalty" Olea-Monarez urges is not an extraordinary and compelling reason for a sentence reduction in this case.

### 4. Sentencing Disparities between Olea-Monarez and codefendants

Olea-Monarez also argues that because he is the only defendant to receive a life sentence, and some codefendants received much lower sentences, these sentencing disparities constitute an extraordinary and compelling reason to grant him relief.  The Court disagrees.

---

[34] *Id*. at 4.

[35] *Id*. at 5.

[36] His base offense level would have still been 38, plus the following enhancements based on the evidence: +2 levels for maintaining drug-involved premises +2 levels for importation of methamphetamine + 2 levels for firearm (given no plea to the firearms counts) + 4 levels for role in the offense – 3 levels for acceptance of responsibility = an adjusted offense level of 45.

The Court declines to specifically discuss the sentences of the nine codefendants. Some of them cooperated with the government and received downward departures for their substantial assistance. Others were far less culpable than Olea-Monarez who was the head of this large-scale drug trafficking operation. None of the codefendants' guideline ranges were life and most were not close to a guideline range of life.[37] All of them pled guilty, accepted responsibility, and declined to perjure themselves at trial. Olea-Monarez was the only defendant who received all of the following enhancements: +4 for organizer or leader, +2 for maintaining a drug-involved premise, +2 for importation, and +2 for obstruction. No other defendant was charged with 21 counts in the 31-count Superseding Indictment. The disparities in these sentences were not unwarranted, and this does not provide an extraordinary and compelling reason for a sentence reduction.

### 5. "Other reasons" including rehabilitation and other § 3553 factors

Finally, Olea-Monarez urges the Court to reduce his sentence based on "other reasons," under the policy statement that lists grounds including medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, or "other reasons" that are similar "in gravity" to the listed categories.[38] He argues that the combination of reasons he raises—the length of the sentence, the change to the § 924(c) mandatory minimum, the trial penalty, codefendant disparities in sentences, and his rehabilitation are similar in gravity to the listed categories of age, medical circumstances, family circumstances, and in-custody abuse.

---

[37] One was 324-405 months; two were 292-365 months; one was 235-293 months; one was 210-262 months; one was 188-235 months; one was 168-210 months; and two were 135-168 months. These guideline ranges are before downward departures for substantial assistance; four codefendants cooperated and testified at trial, and received departures for substantial assistance.

[38] U.S. Sent. Comm'n, Supp. to Appx. C, Amendment 814, Reasons for Amendment, at 207; U.S.S.G. § 1B1.13(b)(5).

Attached to Olea-Monarez's motion for compassionate release,[39] supplement to motion,[40] and reply,[41] are records of his Individualized Needs Plan-Program Review and Chronological Disciplinary Record at Hazelton USP. These records show Olea-Monarez's laudable rehabilitative efforts. He has taken classes in English, enrolled in classes to obtain his GED and driver's license, and completed classes on health and substance abuse. He has had only two disciplinary infractions: one in 2017 for fighting and one in 2018 for being absent from assignment. And, though his Adjusted Offense Level was 48, five levels above the maximum level 43 on the grid, his Criminal History Category was I, based on his minimal criminal history of one prior conviction for theft, for which he received 12 months of probation. The Court finds none of these reasons, singularly or in combination, are extraordinary and compelling reasons to grant him relief, other than the change to the § 924(c) stacking provision.

Moreover, even if the Court found any further extraordinary and compelling reasons, the Court finds that the § 3553 factors weigh heavily against reducing Olea-Monarez's life sentence. Olea-Monarez is 43, had relatively little criminal history, and has demonstrated efforts to rehabilitate himself in prison. If he were released he would likely be deported, though it is also possible that he would illegally return to the United States.

Further, the nature and seriousness of his offenses in this case weigh heavily against him. He was the leader and organizer of an extensive, large-scale drug trafficking organization. The nine codefendants and unindicted coconspirators worked for him. One of the codefendants who worked for him was his young stepson, Juan Carlos Alvarez. Olea-Monarez was far more culpable than his codefendants; he was convicted of 21 of the 31 counts in the Superseding

---

[39] Doc. 690-3.

[40] Docs. 695-2, 695-3.

[41] Docs. 775-1, 775-2.

Indictment.  He was responsible for trafficking at least 86 kilograms of ice methamphetamine, as well as cocaine and heroin.  His guideline sentence of life is conservatively based on 86 kilograms of ice methamphetamine, when the guideline is for 4.5 kilograms or more; and the cocaine, marijuana and heroin were not included in the drug calculations.  He owned and controlled two large marijuana grow operations.  He imported the methamphetamine from Mexico.  There was evidence at trial that he "crossed," meaning imported, undocumented people from Mexico to work his marijuana farms.  He used or carried a firearm on at least two occasions in furtherance of his drug trafficking.  Although there are disparities between his sentence and the sentences of his codefendants, these disparities are warranted.  In short, a life sentence in this case is one that provides just punishment, promotes respect for the law, reflects the seriousness of the offense, deters crime, and protects the public.

### III.   Conclusion

The Court grants Defendant Olea-Monarez's motion for compassionate release in part—reducing his sentence on Count 28 from 25 years to 5 years consecutive to all other counts.  Thus, Olea-Monarez's overall sentence is reduced from Life plus 30 years consecutive to Life plus 10 years consecutive.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Olea-Monarez's motion for compassionate release is **granted in part**—reducing his sentence on Count 28 from 25 years to 5 years consecutive to all other counts, for a controlling sentence of Life plus a consecutive 10 years.  The motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: November 25, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE